UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:

Case No.: 13-21220-BKC-EPK
Chapter 11 Proceeding

**CASALE MARBLE IMPORTS, INC.**

    Debtor.
_____/

**DEBTOR'S SECOND EMERGENCY MOTION FOR ORDER (A) AUTHORIZING THE DEBTOR (1) TO USE CASH COLLATERAL ON AN INTERIM BASIS PURSUANT TO 11 U.S.C. §363, AND (2) TO PROVIDE ADEQUATE PROTECTION IN CONNECTION THEREWITH PURSUANT TO 11 U.S.C. §361, AND (B) SETTING A <u>FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001</u>**

**The Debtor seeks to continue to operate its business, to preserve the value of its estate, and to facilitate a successful reorganization. Without the immediate authorization to use cash collateral, the Debtor will not be able to meet payroll obligations or to acquire materials and services for its day-to- day operations. The Debtor seeks to have this motion heard on July 10, 2013, along with PNC Bank, NA's, Motion to Dismiss.**

**CASALE MARBLE IMPORTS, INC.,** as debtor and debtor-in-possession ("CASALE" or "Debtor"), respectfully requests, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, 11 U.S.C. §§101 *et. seq.* (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure 4001(b) and 9014 (the "Bankruptcy Rules"), and Local Rules 9013-1(G) and 9075-1, entry of a second order of the Court authorizing the use of cash, including cash collateral in which PNC Bank, NA "Lender") may claim an interest and the granting of adequate protection, and respectfully represents the following:

**Jurisdiction**

1.  This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 108.

**Background**

2.  On May 14, 2013, the Debtor filed its voluntary petition for relief under Chapter 11, Title II, United States Code (the "Petition Date").

3.  The Debtor is operating its business and managing its affairs as debtor and debtor-in-possession. 11 U.S.C. §§ 1107(a) and 1108.

4.  The Debtor is engaged in the ownership and operation of a marble fabrication and installation business, and a marble distribution business located in Palm Beach County, Florida.

5.  By this Motion the Debtor seeks the entry of a second interim Order (the "Interim Order") authorizing, on an emergency and limited basis, use of "Cash Collateral" (as that term is defined in section 363(a) of the Bankruptcy Code). The filing of this Motion does not constitute an admission by the Debtor that the Lender holds valid liens on the Debtor's cash. The Debtor reserves the right to contest the validity, priority, and extent of the Lender's lien as well as the amount of the Lender's claims.

6.  On May 20, 2013, the Debtor filed an initial request for the approval to use cash collateral. The Court heard this request at a hearing held on May 23, 2013. The Court denied this motion without prejudice. The Debtor provided a more in depth budget and balance sheet, and filed its Renewed Motion for Authority to Use Cash Collateral

**(DE#36).** The Court granted the Debtor's request on June 28, 2013.

7. The prior Order (I) Authorizing the Use of Cash Collateral and (II) Granting Adequate Protection, authorized the use of cash collateral up through and including July 10, 2013. Accordingly, the Debtor files this motion seeking a second Order Authorizing the Use of Cash Collateral. The Debtor attaches its proposed second budget **as Exhibit "1",** as well as its second projected balance sheet statement through December 2013, **attached as Exhibit "2".**

8. Any cash or cash equivalents, funds or proceeds (the "Cash Collateral") of or from all accounts receivable (collectively, the "Collateral") generated by the Debtor may constitute the cash collateral of the Lender within the meaning of Section 363 of the Bankruptcy Code.

9. The Lender has asserted an interest in Cash Collateral pursuant to the Lender's potential secured claims arising for the prior Chapter 11 bankruptcy filing fort the Debtor.

10. An immediate and critical need exists for the Debtor to be permitted access to Cash Collateral to continue to operation.

11. On or about the Petition Date, the Debtor filed an Expedited Motion for Authority to Pay or Honor Prepetition Obligations to Certain Critical Vendors **(DE#6)** and an Expedited Motion to Allow the Negotiation of Pre-Petition Checks **(DE#7).** The Court set this motion for an emergency hearing on May 17, 2013.

12. Prior to the hearing set before this Court, on May 16, 2013, the Lender filed a Motion to Prohibit the Use of Cash Collateral **(DE#18).** At the emergency hearing, the

parties agreed to the entry of an Agreed Order allowing the Debtor to pay certain pre-petition wages. However, the Court set a further hearing on May 23, 2013, to hear the outstanding issues.

13. By this Motion the Debtor further seeks a final hearing on this Motion to be held no less than fifteen (15) days from service of a notice of hearing on such final hearing, in accordance with Bankruptcy Rules 4001(b)(2) and (3).

14. The Debtor acknowledges that the Lender, assuming that it is properly secured and perfected in the Cash Collateral, may be entitled to adequate protection of its security interest in and lien on the Cash Collateral generated from the use and/or sale of the Collateral after the Petition Date in accordance with 11 U.S.C. §§ 361 and 363. In connection therewith and in an abundance of caution, the Debtor seeks the use of Cash Collateral in its operations and, as such, if necessary, it will provide adequate protection to the Lender pursuant to the terms hereof.

15. The Debtor proposes to use the Cash Collateral in accordance with the terms of that certain Budget prepared by the Debtor and attached hereto as **Exhibit "1"** (the "Budget").

16. The Debtor also requests that it be authorized: (i) to exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (ii) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

17. Pursuant to the terms hereof, the Debtor shall provide and will provide adequate protection to the Lender as contemplated and required by sections 361, 363(c)(2)(B) and 363(e), respectively, and hereby seeks the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditors' interest in such property. *See* 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *See In re Swedeland Dev. Group Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (*citing In re O'Connor*, 808 F.2d 393, 1396-97 (10th Cir. 1987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

18. Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained. *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy"). Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D.Or. 1982). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich.1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

19. The Debtor's requested use of Cash Collateral and the protections afforded to

the Lender herein, including but not limited to the potential granting of an administrative claim, replacement lien, and reporting, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Lender's collateral.

20.     Pursuant to the attached cash flow statement, the Debtor currently has accounts receivable totaling $400,202.00 and inventory in the amount of $3,273,868.00. PNC Bank, NA, has a lien on these assets pursuant to the loan agreements executed by the Debtor in the previous Chapter 11 bankruptcy.

21.     As stated above, the Debtor proposes that the Lender will be adequately protected by the granting of a replacement lien in the assets generated by the use of its cash collateral. As evidenced by the attached projected Profit & Loss statement, if the Debtor is allowed to use the current cash collateral through June 2013, accounts receivable will increase to $445,958.00 (an increase in $45,756.00), while inventory will decrease to $2,938,612.00 (a decrease of $77,920.00).

22.     However, the Debtor proposes to pay the Lender seventy percent (70%) of all available monthly cash through the conclusion of this case. This would also result in the Lender not only being provide with a replacement lien on all assets as stated above, but the Lender receiving at least a projected $101,392.00[1] through the end of June 2013.

23.     The Debtor asserts that the replacement lien on these assets, as well as providing the cash above, is sufficient to provide the Lender with adequate protection on its collateral. During this period, the Debtor asserts that it will be able to begin the process of

---

[1] This amount includes $90,331.00 which was taken from the Debtor's operating account in May 2013 by PNC Bank, NA.

properly liquidate portions of its inventory, while maximizing the value of the business as a going concern.

24. Further, the continued operation of the Debtor's business will preserve its going-concern value, enable the Debtor to capitalize on that value through a liquidation strategy, and ultimately facilitate the Debtor's ability to confirm a liquidating Chapter 11 plan. However, as discussed above, if the Debtor is not allowed to use Cash Collateral, it will be unable to operate and will likely shutdown, and the Debtor will lose its clients and deteriorate in value.

25. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern.

26. A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated. *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

27. Accordingly, courts authorize the use of cash collateral to enhance or preserve the Debtor's going-concern value. For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtors' continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtors' business. *Id*. at 460; *see also Fed. Nat. Mortgage Ass'n. v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204,

214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage); *In re Dynaco Corp.,* 162 B.R. 389, 395-96 (Bankr. D.N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor, debtor can use cash collateral in the normal operation of their business).

28.  As discussed above, the Debtor will use Cash Collateral in the ordinary course of operating its business to, among other things, pay employees, and operating expenses. If the Debtor cannot continue to use Cash Collateral, it will be forced to cease operations, which will severely disrupt the Debtor's entire operations. This cessation would irreparably damage the Debtor's business by causing, among other things, employee attrition, lost revenues, and loss of business reputation. By contrast, granting authority will allow the Debtor to maintain operations and preserve the going concern value of its business which will inure to the benefit of the Lender and all other creditors.

29.  If the adequate protection described herein proves inadequate, as determined by the Court after notice and hearing, then to that extent, the Lender will be granted an allowed administrative expense claim having the priority specified in Section 507(b) of the Bankruptcy Code.

30. The Debtor believes that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects Lender. The combination of: (i) the Debtor's ability to preserve the going concern value of the business with the use of Cash Collateral; (ii) providing the Lender with the other protections set forth herein, including the availability of financial reporting; and (iii) granting administrative priority under Section 507(b) of the Bankruptcy Code, adequately protects the Lender's secured positions under § 361(2) and (3). For all of the reasons stated above, this Court's approval of the Debtor's use of Lender's Cash Collateral is proper herein.

31. No trustee or examiner has been appointed in these cases and no official committees have yet been appointed pursuant to Section 1102 of the Bankruptcy Code. Notice of this Motion has been provided to all parties that have filed a Notice of Appearance by CM/ECF, and by U.S. first-class mail to the Debtor's primary secured creditors and 20 largest unsecured creditors.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order, in substantially the form attached: (A) authorizing the Debtor (i) to use the Cash Collateral of the Lender pursuant to the terms set forth above and in accordance with the Budget; and, (ii) setting a final hearing hereon fifteen (15) days after the entry of an interim order on this Motion, and for such other and further relief as the Court deems just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF on the 8th day of July 2013 to:

Denise D Dell-Powell on behalf of Creditor PNC Bank, National Association
ddpowell@burr.com, greid@burr.com

Brett A Elam, Esq. on behalf of Debtor Casale Marble Imports, Inc.
belam@brettelamlaw.com,
info@brettelamlaw.com;jane@brettelamlaw.com;amanda@brettelamlaw.com

Michael A. Nardella on behalf of Creditor PNC Bank, National Association
michael.nardella@burr.com, jlindval@burr.com,greid@burr.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

                BRETT A. ELAM, ESQ.
                BRETT A. ELAM, P.A.
                Attorney for Debtor
                105 S. Narcissus Avenue
                Suite 802
                West Palm Beach, FL 33401
                (561) 833-1113 (telephone)
                (561) 833-1115 (facsimile)

            By: /s/ Brett A. Elam          .
                  BRETT A. ELAM
                  Florida Bar No. 576808


## Casale Marble Imports - Proposed Budget - P&L - 6 month Proforma

| | JULY 2013 | AUGUST 2013 | SEPTEMBER 2013 | OCTOBER 2013 | NOVEMBER 2013 | DECEMBER 2013 | 6 month Total |
|---|---|---|---|---|---|---|---|
| Countertops Fabrication & Installations | 251,376 | 192,331 | 188,468 | 209,682 | 279,767 | 223,157 | 1,344,781 |
| Flooring Installations | 162,252 | 124,141 | 121,647 | 135,340 | 180,577 | 140,712 | 864,669 |
| Distribution | 43,420 | 25,877 | 17,476 | 31,262 | 54,427 | 32,502 | 204,964 |
| **Sales** | **457,048** | **342,349** | **327,591** | **376,284** | **514,771** | **396,372** | **$ 2,414,414** |
| | | | | | | | |
| **Cash Inflows** | 365,638 | 381,719 | 311,212 | 338,655 | 437,555 | 368,626 | |
| Countertops & Flooring Installations | 322,219 | 355,842 | 293,736 | 307,394 | 383,128 | 336,123 | 1,998,441 |
| Distribution | 43,420 | 25,877 | 17,476 | 31,262 | 54,427 | 32,502 | 204,964 |
| **Total Cash Inflows** | **365,638** | **381,719** | **311,212** | **338,655** | **437,555** | **368,626** | **$ 2,203,405** |
| | | | | | | | |
| **Cash Outflows** | | | | | | | |
| Subcontractor Labor | 53,932 | 43,821 | 41,932 | 50,798 | 77,216 | 59,456 | 327,154 |
| Casale Direct Payroll | 92,558 | 122,954 | 94,083 | 94,363 | 115,954 | 95,307 | 615,218 |
| Payroll Taxes | 26,842 | 35,657 | 27,284 | 27,365 | 33,627 | 27,639 | 178,413 |
| Repairs & Maintenance | 3,500 | 3,000 | 2,500 | 2,350 | 2,250 | 2,500 | 16,100 |
| Materials Needed for Jobs | 68,557 | 70,182 | 58,966 | 60,958 | 87,511 | 63,419 | 409,594 |
| Office Supplies & Misc. Office Expenses | 2,250 | 2,250 | 2,250 | 4,500 | 4,000 | 4,000 | 19,250 |
| Telephone & Utilities | 5,675 | 5,675 | 5,675 | 5,675 | 5,675 | 5,675 | 34,050 |
| Commercial & General Insurance | 20,447 | 5,885 | 16,241 | 5,885 | 11,660 | 16,241 | 76,359 |
| Workers Compensation | 5,227 | 5,368 | 7,131 | 5,457 | 5,473 | 6,725 | 35,382 |
| C/C Processing & Bank Fee | 1,684 | 1,828 | 1,369 | 1,310 | 1,505 | 2,059 | 9,756 |
| Sales Tax Payment | 2,343 | 1,529 | 1,435 | 1,530 | 1,732 | 1,732 | 10,301 |
| Property & Tangible Tax Payments | - | - | - | - | - | - | - |
| Professional Services | 6,250 | 9,850 | 10,850 | 6,250 | 6,250 | 6,250 | 45,700 |
| Vehicle Expenses | 6,399 | 4,793 | 4,586 | 5,268 | 7,207 | 5,549 | 33,802 |
| Building Rents | 4,793 | 4,793 | 4,793 | 4,793 | 4,792 | 4,792 | 28,757 |
| Bankruptcy Quarterly Fees | 4,875 | - | - | 6,500 | - | - | 11,375 |
| Advertising & Other | 500 | 500 | 500 | 500 | 500 | 500 | 3,000 |
| **Total Cash Outflows** | **305,831** | **318,084** | **279,596** | **283,503** | **365,352** | **301,845** | **1,854,211** |
| | | | | | | | |
| **Cash Surplus (Deficit) from Operations** | **59,807** | **63,635** | **31,616** | **55,153** | **72,203** | **66,781** | **349,195** |
| **Loans Payable** | | | | | | | |
| PNC Bank - 70% of cash at month end | 4,164 | 20,247 | 28,002 | 8,164 | 6,685 | 18,420 | 85,683 |
| PNC Bank - Cash Collateral Payment | 32,668 | 32,309 | 31,953 | 31,602 | 31,254 | 30,910 | 190,696 |
| Unsecured Creditors Payment | - | - | - | 17,500 | 17,500 | 17,500 | 52,500 |
| **Total Loan Payments** | **36,832** | **52,555** | **59,956** | **57,266** | **55,439** | **66,830** | **328,879** |
| | | | | | | | |
| **Opening Cash Balance** | 5,949 | 28,924 | 40,003 | 11,663 | 9,550 | 26,314 | |
| **Ending Cash Balance** | **28,924** | **40,003** | **11,663** | **9,550** | **26,314** | **26,265** | |

## Casale Marble Imports - Proposed Budget - Balance Sheet - 6 month Proforma

| | Date of Filing | JULY 2013 | AUGUST 2013 | SEPTEMBER 2013 | OCTOBER 2013 | NOVEMBER 2013 | DECEMBER 2013 |
|---|---:|---:|---:|---:|---:|---:|---:|
| Current assets: | | | | | | | |
|   Cash | 127,046 | 28,924 | 40,003 | 11,663 | 9,550 | 26,314 | 26,265 |
|   Accounts receivable (net) | 400,202 | 545,799 | 506,429 | 522,809 | 560,437 | 582,653 | 500,399 |
|   Inventory - Slabs & Flooring | 3,016,532 | 2,937,152 | 2,904,844 | 2,872,890 | 2,841,289 | 2,810,034 | 2,779,124 |
|   Inventory - all other | 257,336 | 248,925 | 250,689 | 247,430 | 244,213 | 246,039 | 247,840 |
|   Prepaid Insurance | 10,269 | 27,370 | 26,555 | 36,096 | 35,281 | 40,241 | 49,782 |
|   Prepaid Expenses | 3,131 | 5,485 | 5,615 | 4,717 | 4,877 | 7,001 | 5,074 |
|   Other current assets | 21,090 | 21,090 | 21,090 | 21,090 | 21,090 | 21,090 | 21,090 |
| Total current assets | 3,835,607 | 3,814,745 | 3,755,225 | 3,716,696 | 3,716,737 | 3,733,372 | 3,629,573 |
| | | | | | | | |
|   Vehicles | 180,478 | 180,478 | 180,478 | 180,478 | 180,478 | 180,478 | 180,478 |
|   Equipment | 2,059,703 | 2,059,703 | 2,059,703 | 2,059,703 | 2,059,703 | 2,059,703 | 2,059,703 |
|   Computers | 285,126 | 285,126 | 285,126 | 285,126 | 285,126 | 285,126 | 285,126 |
|   Furniture & Fixtures | 152,739 | 152,739 | 152,739 | 152,739 | 152,739 | 152,739 | 152,739 |
|   Leasehold Improvements | 1,193,020 | 1,193,020 | 1,193,020 | 1,193,020 | 1,193,020 | 1,193,020 | 1,193,020 |
|   Accum Deprec - Vehicles | (180,478) | (180,478) | (180,478) | (180,478) | (180,478) | (180,478) | (180,478) |
|   Accum Deprec - Equipment | (2,056,966) | (2,058,163) | (2,058,562) | (2,058,961) | (2,059,360) | (2,059,703) | (2,059,703) |
|   Accum Deprec - Computers | (280,750) | (281,173) | (281,314) | (281,456) | (281,597) | (281,738) | (281,879) |
|   Accum Deprec - Furniture & Fixtures | (137,989) | (141,150) | (142,203) | (143,257) | (144,311) | (145,364) | (146,418) |
|   Accum Deprec - Leasehold Improv. | (782,641) | (797,691) | (802,708) | (807,724) | (812,741) | (817,758) | (822,775) |
| Fixed assets (net) | 432,243 | 412,411 | 405,801 | 399,190 | 392,579 | 386,025 | 379,813 |
| **Total assets** | **4,267,850** | **4,227,156** | **4,161,025** | **4,115,886** | **4,109,316** | **4,119,396** | **4,009,386** |
| | | | | | | | |
| Liabilities and equity: | | | | | | | |
|   Current liabilities: | | | | | | | |
|     Accounts Payable | - | 45,705 | 34,235 | 32,759 | 37,628 | 51,477 | 39,637 |
|     Accrued Expenses | 154,936 | 173,996 | 182,493 | 190,989 | 199,486 | 207,982 | 216,479 |
|     Customer Deposits | 125,616 | 159,967 | 119,822 | 114,657 | 131,699 | 154,431 | 138,730 |
|     Sales Tax Payable | 3,859 | 3,376 | 3,656 | 2,739 | 2,621 | 3,010 | 4,118 |
|     Payroll Taxes Payable | 17,200 | 6,109 | 7,377 | 6,209 | 6,228 | 6,957 | 6,290 |
|     Workers Compensation Payable | 3,112 | 5,368 | 7,131 | 5,457 | 5,473 | 6,725 | 5,528 |
|     PNC - Loan # 101 - Note Payable | 2,633,843 | 2,459,968 | 2,407,412 | 2,347,457 | 2,307,690 | 2,269,751 | 2,220,421 |
|     PNC - Loan # 101 - Interest on N/P | 141,722 | 141,722 | 141,722 | 141,722 | 141,722 | 141,722 | 141,722 |
|     PNC - Loan # 102 - Consolidated Note | 1,030,631 | 1,030,631 | 1,030,631 | 1,030,631 | 1,030,631 | 1,030,631 | 1,030,631 |
|     Pre-Petition Payables - 2013 | 107,398 | 107,398 | 107,398 | 107,398 | 107,398 | 107,398 | 107,398 |
|     Unsecured Creditors Payable | 810,000 | 810,000 | 810,000 | 810,000 | 792,500 | 775,000 | 757,500 |
| Total current liabilities | 5,028,316 | 4,898,535 | 4,817,643 | 4,757,259 | 4,725,448 | 4,703,608 | 4,628,817 |
| Equity (Net Loss) | (760,467) | (671,379) | (656,618) | (641,373) | (616,132) | (584,212) | (619,431) |
| **Total liabilities and equity** | **4,267,850** | **4,227,156** | **4,161,025** | **4,115,886** | **4,109,316** | **4,119,396** | **4,009,386** |

PROPOSED

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:

Case No.:  13-21220-BKC-EPK
Chapter 11 Proceeding

**CASALE MARBLE IMPORTS, INC.**

    **Debtor.**

_____/

**ORDER GRANTING DEBTOR-IN-POSSESSION'S SECOND MOTION FOR
AUTHORITY TO USE CASH COLLATERAL PURSUANT TO
11 U.S.C. § 363 AND FINAL HEARING**

**THIS MATTER** came before the Court for hearing on July 10, 2013 upon Casale Marble Imports, Inc.'s (the "Debtor") Second *Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and Final Hearing* (the "Motion") [ECF No. ___]. The Court, having considered the matter, and the record in this case, hereby

**ORDERS AND ADJUDGES** as follows:

1. The Motion is **GRANTED** on an interim basis subject to a final hearing.

2. <u>Use of Cash Collateral</u>. The Debtor shall be entitled to use cash collateral to pay all ordinary and necessary expenses in the ordinary course of its business for the purposes contained in the budget attached as **Exhibit "A."** through and including 5:00 p.m. on August 10, 2013. The Debtor is also authorized: (i) to exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (ii) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

3. <u>Duration</u>. The use of cash collateral provisions in this Order shall remain in effect until August 10, 2013, or until otherwise ordered by the Court.

4. <u>Final Hearing</u>. This Court shall hold a final hearing on cash collateral on _____ ___, 2013 at ___:_____ ___.m. at the United States Bankruptcy Courthouse, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401.

###

Submitted by:

Brett A. Elam
Counsel for the Debtor
105 South Narcissus Avenue
Suite 802
West Palm Beach, FL 33401
Telephone: (561) 833-1113
Facsimile: (561) 833-1115

Copy to: Brett A. Elam, Esq., 105 South Narcissus Avenue, Suite 802, West Palm Beach, FL 33401.
[Attorney Elam is directed to serve a copy of this Order upon all interested parties.]